**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

January 07, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
DEPUTY CLERK

TERESA M. BAKER,         )
                           )
    Plaintiff,           )
                           )    Case No.7:25-CV-00375
    v.                )
                           )
ADAMS CONSTRUCTION COMPANY  )
                           )
    SERVE: Olivia Moulds and  )
    Victor O' Cardwell       )
    10 S Jefferson St Ste 1800  )
    Roanoke, VA, 24011 - 1323  )
                           )
    Defendant.         )
                           )

## SECOND AMENDED COMPLAINT

Plaintiff Teresa M. Baker ("Baker"), pro se, submits this First Amended Complaint against

Defendant Adams Construction Company ("Defendant" or "ACC").

## NATURE OF ACTION

1.    This is an action for damages against Defendant for sex-based discrimination, sexual

harassment, sexual assault, and retaliation in violation of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Virginia Human Rights

Act, Va. Code § 2.2-3900 et seq. ("VHRA"). This action also states claims against

Defendant for assault and battery under Virginia common law and seeks to hold Defendant

liable under the doctrine of respondeat superior.

2.    Plaintiff, Teresa Baker, suffered sexual harassment, assault, discrimination, and retaliation

while working at Adams Construction Company through a staffing agency. After she

rejected her supervisor's sexual advances, Defendant reduced her work hours and canceled her assignments.

## PARTIES AND RELEVANT NON-PARTIES

3. Plaintiff, Teresa M. Baker, is a woman and an adult resident of Roanoke, Virginia. As such, she is a member of a protected class based on her sex.

4. Defendant Adams Construction Company is a company registered in the Commonwealth of Virginia, with its principal place of business in Roanoke, Virginia.

5. Baker worked as a flagger for Adams Construction Company through TrueBlue/PeopleReady, a staffing agency, at all times relevant to this Complaint.

6. Baker was an "employee" of Adams Construction Company within the meaning of 42 U.S.C § 2000e(f).

7. ACC is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and Virginia Code § 2.2-3905.

8. ACC is engaged in an industry affecting commerce and, on information and belief, had greater than fifteen employees during the relevant time periods in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b). ACC thereby had enough employees to be subject to the jurisdiction of both Title VII and the VHRA.

9. Non-party William Carter ("Carter") served as Baker's supervisor for purposes of Title VII liability as he held authority to take tangible employment actions, including assigning positions, determining daily tasks, organizing staffing, making decisions about worker returns, and managing work schedules.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States, specifically Title VII.

11. This Court has supplemental jurisdiction over Baker's state law claims against Defendant under 28 U.S.C. § 1367(a) because the facts of the federal and state claims occurred in this judicial district and form part of the same case or controversy.

12. Defendant ACC is subject to personal jurisdiction of the Court because it regularly conducts business within this judicial district.

13. Venue is proper in the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this district, and Defendant maintains its principal place of business in this district.

14. Plaintiff has satisfied all administrative prerequisites for bringing this action. Baker timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 438-2024-02116, on July 24, 2024. The EEOC issued a Notice of Right to Sue on March 6, 2025, and Baker filed this action within ninety (90) days of receiving the notice.

## FACTUAL ALLEGATIONS

15. Baker worked as a flagger for ACC through TrueBlue/PeopleReady, a staffing agency from approximately September 2023 to November 2023.

16. TrueBlue/PeopleReady assigned Baker to another position at ACC in November 2023, but, as described below, ACC canceled that placement as well as the assignment she was originally assigned before being reassigned.

17. ACC assigned a pilot car driver, William Carter ("Carter"), to supervise Baker and other temporary workers.

18. Carter exercised supervisory authority over Baker's employment by organizing staff through TrueBlue/PeopleReady, serving as ACC's point of contact for her position, and determining the daily tasks Baker would complete. Carter determined whether workers would return and continue to be scheduled for work on the site.

   A. This supervisory authority is not an isolated incident but a systemic practice of Defendant ACC. Other pilot car drivers in spring of 2025, specifically Glenn Crimley, Jason Muterspaugh and Tiffany Overstreet, exercise identical control over temporary crews. This includes authority to transport crews and assign jobsite positions of dual employed flaggers, the power to grant or withhold VDOT-mandated safety breaks, as seen on the Franklin County job sites in Spring 2025 proving a companywide reliance on pilot car drivers as de facto supervisors.

19. Defendant has engaged in a pattern of falsifying business records to obscure the presence of William Carter. In its December 18, 2025 supplement, Defendant falsely identifies Terry Kirk as the driver for the assault dates. Plaintiff asserts that because Carter is African American and Kirk is not, this is a willful provable falsehood attempt to mislead the Court to conceal carters presence.

20. Similarly, for the Nov 16, 2023 assignment, Defendant falsely claims Cornelius Davis was the contact (Bates 0002) , when an individual named 'Nick' was the sole ACC agent present who dismissed the crew upon his arrival. Davis was originally supposed to be on that jobsite according to Wyatt Thornhill.

## A. ACC Supervisor William Carter Assaults Ms. Baker

21. On or about September 21, 2023, Baker noticed Carter spending a lot of time near her and speaking to her more than other workers.

22. On or about this same date, September 21, 2023, Carter told Baker that he liked her and told her he would request through TrueBlue/PeopleReady that she return.

23. On the following day, September 26, 2023, Carter once again spent a disproportionate amount of time focused on Baker. Carter spent time near where Baker worked and asked her questions about her personal life.

24. On one occasion in September 2023, Carter told Baker in person that she "looked like a freak in the bedroom".

25. On September 29, 2023, between the hours of 9am-12pm, Carter physically assaulted Baker while she performed work for ACC. Carter approached Baker and began to touch her breast as she stood in the middle of the road holding the stop and go paddle.

   A. Prior to the assault, Plaintiff informed de facto supervisor William Carter of safety concerns regarding Vernon Peak's self-disclosed history of rape allegations and requested not to be left alone with him.

   B. Acting with predatory intent and in response to this notice, Carter used his supervisory authority to intentionally assign Plaintiff to a flagging post at the

'bottom of a hill.' This location was specifically selected to ensure Plaintiff was physically isolated and hidden from the line of sight of the rest of the crew to facilitate the sexual assault.

26. Baker handed Carter the sign she had been holding and went to her vehicle to distance herself from Carter.

27. Carter followed Baker to her vehicle and held the driver's-side door of her vehicle open while Ms. Baker sat in the driver's seat.

28. Carter reached into Baker's vehicle and groped her breast again and her genitals while making unwarranted and unwelcome, sexually inappropriate statements to Baker.

29. When Carter received a call on his radio that another flagger needed a bathroom break, he walked away from area, Baker used the opportunity to exit her vehicle and return to her post in an attempt to once again evade Carter.

30. Carter was and is on the sex offender registry. His most recent conviction occurred on March 8, 2024. Prior to that, Carter was convicted of failing to register on August 14, 2023, only six weeks before he assaulted Baker on or around September 29, 2023.


**B. Carter's Continued Sexual Harassment of Ms. Baker Following the Assault**

31. Before and after the assault, Carter engaged in harassing and discriminatory behavior against Baker including, but not limited to, sending Baker inappropriate text messages.

32. Before and after the assault, Carter engaged in harassing behavior against Baker by subjecting her to numerous phone calls.

33. PeopleReady/TrueBlue sent Carter's phone number to Baker on or about September 29, 2023, when Baker had difficulty finding the work site for the day.

34. On September 29, 2023, at approximately 4:54pm, following his assault of Baker, Carter texted Baker. Carter's text messages to Baker on that date included a "kissy face" emoji.

35. Carter texted Baker again at 10:29pm on September 29, 2023, with the message "Hey u sleep" to which Baker did not respond.

36. On or about October 2, 2023, at 7:24pm, Carter texted Baker the message: "U okay" with a heart-eyes emoji.

37. When Baker responded, "I'm fine" and "why you ask that" Carter told her that he "just had a chance to talk guess who miss you?" and wrote "look really attractive today" followed by a kissy-face emoji.

38. On or about October 2, 2023, Baker rejected Carter's advances via text message and told Carter that men only viewed her as an object.


## C. Retaliation and Subsequent Systemic Negligence

39. After Ms. Baker rejected Carter's advances, ACC ceased scheduling her to work altogether.

40. Since September 2023, Baker had been working 10-12 hours per day for ACC, every day of the week. After Baker rejected Carter's advances, she was not requested to return as she had been.

41. The sudden cessation of Baker's work resulted in her having to accept projects from various other employers through PeopleReady/TrueBlue, resulting in a reduction of her pay, hours, and job instability.

42. Baker suffered significant loss of income and work opportunities after she rejected Carter's advances.

43. On November 15, 2023, Baker accepted a work assignment from ACC, meant to begin on November 16, 2023.

44. On November 15, 2023, ACC canceled Baker's assignment.

45. PeopleReady/TrueBlue placed Baker on a different assignment with ACC for November 16, 2023.

46. On or about November 16, 2023, Baker arrived to work this alternate position with ACC, only to find the work had been cancelled altogether.

47. Both the harassment and retaliation suffered by Baker were perpetuated by her supervisor at ACC, Carter.

48. Baker filed an EEOC complaint on July 24, 2024, Charge No. 438-2024-02116.

**D. Systemic Negligence and Conscious Indifference (The RSO Employees)**

49. The negligence of the Defendant is not limited to William Carter. Upon investigation, Plaintiff has discovered and confirmed that ACC's hiring and retention practices demonstrate a pattern of gross negligence, willful, wanton, and malicious conduct.

50. Specifically, as of December 2, 2025, the Defendant currently employs at least 12 individuals who are listed on the Virginia Registered Sex Offender Registry across its various operational sites, demonstrating a company-wide lack of due diligence.

51. These RSOs are specifically employed at the following ACC locations:

   A. Home Office (523 Rutherford Ave NE, Roanoke) (7 RSOs): Curtis Beverly, Joshua Russell, Glenn Crimley, Lionel Graves, Terry Kirk, Robert Furrow, and Benjamin Difibaugh.

   B. Maintenance Shop (7315 Woodhaven Rd, Roanoke) (1 RSO): William Goad.

C.  South Side Division (225 Gypsum Rd, Danville) (1 RSO): Christopher Alderson.

D.  Longhorn Brothers (781 Warriors Rd, Lynchburg) (1 RSO): Kwame Anthony Jr.

E.  Short Paving (1006 East Bank St, Petersburg) (2 RSOs): Andrew Merhout and Karl Robertson.

52.  Each of these currently employed RSOs (including the listed individuals) has discoverable information regarding their job duties, any supervisory roles they hold (including de facto), ACC's employment application and hiring screening (background check) procedures, and ACC's compliance with State Police/Probation and Parole requirements for employment confirmations of RSOs.

53.  The widespread employment of numerous RSOs, despite the public nature of the registry, constitutes a conscious and reckless indifference to the safety of all ACC employees, and is evidence of a policy of gross negligence that directly led to the hostile work environment, sexual harassment, assault suffered, and retaliation by the Plaintiff.


**E. Education and Mitigation of Damages**

54.  As a direct and proximate result of Defendant Adams Construction Company's unlawful conduct, including sexual harassment, sexual assault, and retaliation, Plaintiff suffered a sudden and involuntary disruption to her ability to continue working in her prior employment field. Following the assault and Defendant's retaliatory refusal to continue assigning her work, Plaintiff experienced loss of income, loss of job stability, and a materially altered employment trajectory.

55.  In order to mitigate her damages and regain financial stability, Plaintiff reasonably undertook education and workforce retraining. Plaintiff enrolled in post-secondary

coursework aimed at restoring her earning capacity and securing safer, sustainable employment following Defendant's conduct.

56. Plaintiff incurred concrete educational expenses, including tuition, fees, and related costs, and assumed student loan obligations as a foreseeable consequence of Defendant's actions and her reasonable efforts to mitigate lost wages and future earning capacity. These education and retraining expenses were necessary, reasonable, and directly attributable to Defendant's unlawful conduct.

## COUNT I: HOSTILE WORK ENVIRONMENT IN VIOLATION OF

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

57. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

58. Baker is female and a member of a protected class based on her sex.

59. ACC subjected Baker to unwelcome sexual harassment through Carter acting as a de facto supervisor.

60. The harassment to which ACC subjected Baker included physical, sexual assault of her person on the worksite as well as inappropriate text messages commenting on her appearance, and repeated phone calls on date of sexual assault.

61. The harassment to which ACC subjected Baker was severe and pervasive, altering the conditions of Baker's employment.

62. Carter controlled whether Baker would continue working for ACC and used his supervisory authority to pressure her with sexual advances.

63. ACC knew or should have known about the harassment based on Carter's role as a supervisory employee.

64. As a direct and proximate result of Defendant's discriminatory acts, Baker has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary loss.

65. ACC's actions constitute willful violations of Title VII.


## COUNT II: SEX DISCRIMINATION IN VIOLATION OF

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

66. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

67. Baker suffered adverse employment actions based on her sex, including the sudden cessation of her work with ACC caused by her rejection of Carter's sexual advances.

68. Carter conditioned Baker's continued employment with ACC on her willingness to accept his sexual advances.

69. ACC's actions constitute sex discrimination under Title VII.

70. As a direct and proximate result of Defendant's discriminatory acts, Baker has suffered and will continue to suffer pecuniary losses, mental anguish, pain and suffering, and other non-pecuniary losses.


## COUNT III: RETALIATION IN VIOLATION OF

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

71. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

72. Baker engaged in protected activity when she rejected Carter's sexual advances while working for ACC.

73. Adams Construction Company, through Carter, retaliated against Baker by immediately ceasing work for ACC after Baker rejected his sexual advances.

74. ACC further retaliated against Baker when it offered her alternative positions, which it canceled on at least two separate occasions for the same day November 16, 2023.

75. A causal connection exists between Baker's protected activities and ACC's constructive termination of her employment.

76. As a direct and proximate result of Defendant's discriminatory acts, Baker has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary loss.

## COUNT IV: VIOLATIONS OF THE VIRGINIA HUMAN RIGHTS ACT
## (HOSTILE WORK ENVIRONMENT)

77. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

78. The Virginia Human Rights Act prohibits discrimination in employment based on sex.

79. Defendant's conduct, as described above, resulted in Defendant's discriminatory conduct.

80. ACC, through Carter, violated the VHRA through his sexual harassment of Baker, and through his discrimination against Baker based on her sex, female.

81. Carter's actions constituted the creation of a hostile work environment, in further violation of the VHRA.

82. As a direct and proximate result of Defendant's discriminatory acts, Baker has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary loss.

## COUNT V: SEX DISCRIMINATION (VHRA)

83. Plaintiff re-alleges and incorporates all allegations set forth above.

84. Plaintiff experienced unequal treatment and discriminatory practices under the VHRA.

85. As a result, Plaintiff suffered pecuniary and non-pecuniary losses

## COUNT VI: VIOLATIONS OF THE VIRGINIA
## HUMAN RIGHTS ACT (RETALIATION)

86. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

87. The Virginia Human Rights Act prohibits retaliation against an employee for engaging in protected activity.

88. ACC retaliated against Baker, in violation of the VHRA, when it suddenly stopped asking Baker to return and stopped scheduling her for additional work.

89. ACC further retaliated against Baker, in violation of the VHRA, when it cancelled the only two additional opportunities to perform work for the company that were afforded to Baker in November 2023.

90. As a direct and proximate result of Defendant's retaliatory acts, Baker has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary loss.

## COUNT VII: ASSAULT AND BATTERY, VIRGINIA COMMON LAW

91. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

92. Carter intentionally made harmful and offensive contact with Baker.

93. Carter's actions, including his physical assault of Baker, caused Baker to experience physical harm, emotional distress and mental anguish.

94. Because of Carter's actions, Baker feared for her safety at work while employed by ACC.

95. ACC is liable under respondeat superior because:

96. Carter acted within the scope of his employment

97. The company granted him supervisory authority

98. The assault occurred during work hours

99. The company enabled Carters access to employees

100. As a direct and proximate result of Defendant's discriminatory acts, Baker has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, and other non-pecuniary losses.


## COUNT VIII: NEGLIGENT RETENTION, VIRGINIA COMMON LAW

101. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

102. Defendant ACC had a duty to Baker to use reasonable care in supervising and retaining its employees, including William Carter.

103. Defendant breached its duty by continuing to retain William Carter in a supervisory role over female employees when it knew or should have known, based on his public RSO status and history of sex offenses, that he posed a danger to the Plaintiff.

104. Defendant failed in its duty to Baker by retaining Carter when it knew or should have known about the danger he posed to Baker and after being put on notice of his conduct.

105. As a result of Defendant's negligent retention, Baker suffered severe emotional distress, financial loss, shame, humiliation, indignity, embarrassment, and continued emotional injury.


## COUNT IX: NEGLIGENT HIRING, VIRGINIA COMMON LAW

106. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

107. Defendant ACC had a duty to Ms. Baker to use reasonable care in the hiring of its employees, including conducting background checks commensurate with the public information available on the State Sex Offender Registry.

108. Defendant breached its duty by hiring William Carter and assigning him a supervisory role when it knew or should have known of his public status as a Registered Sex Offender (RSO) and his history of sex offenses.

109. confirmed employment of 12 RSOs across multiple operational sites, as detailed in Section VII.D, further demonstrates the Defendant's systemic failure to exercise reasonable care in its hiring practices.

110. The Defendant's negligent hiring was a direct and proximate cause of the sexual harassment and assault suffered by Baker.

111. As a result of Defendant's negligent hiring, Baker suffered severe emotional distress, financial loss, shame, humiliation, indignity, embarrassment, and continued emotional injury.

## COUNT X: NEGLIGENT SUPERVISION, VIRGINIA COMMON LAW

112. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

113. Defendant ACC had a duty to Baker to exercise reasonable care in the supervision of its employees, including William Carter and the 12 currently employed RSOs.

114. Defendant breached this duty by failing to adequately supervise William Carter, a known RSO, allowing him to use his supervisory authority to sexually harass and assault the Plaintiff.

115. Defendant further breached this duty by failing to properly supervise the 12 RSOs employed across its locations, thereby allowing an unsafe and hostile working environment to exist.

116. The Defendant's negligent supervision was a direct and proximate cause of the injuries and damages suffered by Baker.

117. As a result of Defendant's negligent supervision, Baker suffered severe emotional distress, financial loss, shame, humiliation, indignity, embarrassment, and continued emotional injury.

## COUNT XI: QUID PRO QUO SEXUAL HARASSMENT

118. Plaintiff re-alleges and incorporates all allegations set forth above.

119. ACC employee Carter offered work benefits contingent on sexual compliance or penalized Plaintiff for non-compliance.

120. ACC knew or should have known and failed to prevent it.

## COUNT XII: CONSTRUCTIVE DISCHARGE

121.    Plaintiff re-alleges and incorporates all allegations set forth above.

122.    ACC created intolerable working conditions, compelling Plaintiff to resign from the temp assignments with ACC, causing economic and non-economic harm.

123.    Acc created intolerable working conditions, compelling plaintiff to take assignments with other companies that paid less or gave less hours.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

124.    Plaintiff re-alleges and incorporates all allegations set forth above.

125.    ACC's gross negligence, willful assignment of RSOs to supervisory roles, and conscious disregard for safety caused severe emotional distress.

126.    Conduct was extreme, outrageous, and beyond all bounds of decency.

## COUNT XIV: RESPONDEAT SUPERIOR LIABILITY

127.    Plaintiff re-alleges and incorporates all allegations set forth above.

128.    ACC is directly liable for acts of Carter because he was acting within the scope of employment and authority when committing harassment, assault, or negligent acts.

## COUNT XV: PUNITIVE DAMAGES

129.    Plaintiff re-alleges and incorporates all preceding paragraphs.

130. ACC's conduct in hiring, supervising, and retaining RSOs was willful, wanton, and malicious.

131. Plaintiff seeks punitive damages to punish ACC and deter future misconduct.

## COUNT XVI: GROSS NEGLIGENCE

132. Plaintiff re-alleges and incorporates all allegations set forth above.

133. ACC demonstrated a complete want of care in hiring, supervising, and retaining employees with known RSO status, assigning them to de facto supervisory authority, and ignoring safety risks.

## COUNT XVII: PUNITIVE DAMAGES

134. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

135. The Defendant's conduct, in hiring a known RSO (William Carter) and assigning him supervisory control over a female employee, was willful, wanton, and malicious.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant Adams Construction Company, and that the Court award the following relief:

a. **Declaratory Relief**

A declaration that Defendant's acts, practices, and omissions described herein violated Title VII of the Civil Rights Act of 1964, the Virginia Human Rights Act, and Virginia common law.

**b. Injunctive and Equitable Relief**

Preliminary and permanent injunctive relief requiring Defendant to immediately cease all unlawful employment practices, including sexual harassment, retaliation, and failure to protect temporary workers from known risks of assault and abuse.

**c. Policy and Practice Reforms**

1. An order requiring Defendant to implement and enforce meaningful policy changes, including but not limited to:

2. Mandatory sexual harassment and retaliation training for all supervisory and non-supervisory employees;

3. Clear reporting mechanisms accessible to temporary and contract workers;

4. Independent investigation procedures for complaints of harassment or assault;

5. Disciplinary protocols for supervisory employees who engage in or enable misconduct;

6. Oversight and accountability measures to prevent recurrence of similar conduct.

**d. Back Pay and Lost Compensation**

An award of back pay, lost wages, lost benefits, and other compensation denied to Plaintiff as a result of Defendant's unlawful conduct, including retaliation and constructive discharge, with interest as allowed by law.

e. **Front Pay and Loss of Earning Capacity**

An award of front pay and/or compensation for diminished earning capacity resulting from Defendant's conduct, in an amount to be determined by the jury or the Court.

f. **Compensatory Damages**

Compensatory damages for emotional distress, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other non-economic harms caused by Defendant's actions, in an amount to be determined by the jury.

g. **Economic Damages Including Education and Retraining Costs**

An award of economic damages, including reasonable education, retraining, tuition, fees, and student loan obligations incurred by Plaintiff as a foreseeable result of Defendant's unlawful conduct and Plaintiff's reasonable efforts to mitigate her damages.

h. **Vicarious Liability Damages (Respondeat Superior)**

Damages against Defendant for the acts and omissions of its employees and de facto supervisors, including William Carter, whose conduct occurred within the scope of their employment or was enabled by Defendant's negligence, policies, and failures of supervision.

i. **Punitive Damages**

Punitive damages pursuant to Title VII and Virginia common law, to punish Defendant for willful, reckless, and callous disregard of Plaintiff's federally protected rights and to deter similar misconduct in the future.

**j. Prejudgment and Post-Judgment Interest**

Prejudgment and post-judgment interest on all monetary awards at the maximum rate permitted by law.

k. **Costs and Attorneys' Fees**

An award of costs, litigation expenses, and reasonable attorneys' fees for time pursuant to Title VII, the Virginia Human Rights Act, and other applicable law.

**l. Such Other and Further Relief**

Such other legal, equitable, and injunctive relief as the Court or jury deems just, proper, and necessary under the circumstances.

## JURY DEMAND

**PLAINTIFF TERESA M. BAKER HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Dated:** December 18, 2025

Respectfully Submitted,

/s/ TERESA M. BAKER
Teresa M. Baker Pro Se Plaintiff
116 8 ½ Street SE
Roanoke, Va 24013
Lkg4btrlife@gmail.com
540-475-0049